Case number 16-5102, USA v. Malik Farrad, and case number 16-6730, USA v. Malik Farrad. Or arguments not to exceed 15 minutes per side, Mr. Michael LoSavio for the appellant. Thank you, Mr. Clerk. May it please the court, Mr. McLaurin, colleague law clerks. I'd like to reserve four minutes for rebuttal. Fine. And, First Judge Brewer, good to see you again. I'll try and do better. We had an argument, to clarify for the record, Mr. LoSavio was my counsel in the, not my counsel, but the counsel for the defendant in another case this week. So that is how I have seen him. Yes, I will try and do better than I did. Judge Thapar, pleasure to meet you in person at last. Perhaps after having seen your questioning, I should have asked you out for a cup of coffee, but that's okay. From another case that we were involved in. And Judge Bush, it's good to appear before you for the first time. I was appointed to represent Mr. Farrad on this case out of Tennessee. It is not a case of first impression for the United States the way our case was, Judge Thapar, but it's certainly the first impression as such here in the Sixth Circuit. The Jackson case, which addressed this out of the Seventh Circuit and said quite clearly, taking things off of web postings and trying to authenticate them through an internet service provider just doesn't work. Because it doesn't meet the requirements of 8036. Nor does it serve to authenticate under 902.11 as a self-authentication because you haven't shown that the material is what you purport it to be. The closest we've come here was in Martinez. We're simply looking at the issue of video, which is, for lack of a better metaphor, sequential photographs. Photographs still must be authenticated. And in Martinez, this court said, you're bringing this in to show what the standard is for this procedure. You need to authenticate why this is appropriate. You have to show why this is not hearsay. Why couldn't it be authenticated through 901 under the Thomas case? The Thomas case... Forgive me. The Thomas case let it come in, I think primarily because the objection was hearsay. But they were bringing in these photographs, which were irrelevant to the case, as best I can read from Thomas. They had no relevance to the case. They were just like pictures of... But here the photo is key. So is relevance the problem? Relevance makes... In Thomas, it said, you know, all you're doing is authenticating these to say that they were on this social media site. Well, that's fine. They didn't have any impact. They weren't used to prove anything in the case. Here, as you point out, this Facebook was the evidence convicting Farad. It is being used for the truth of the matter set out in the photograph that Mr. Farad... There's no statement. It can't be hearsay. What's the problem with the photo? As long as someone... In other words, let's assume we agree with you, okay, that it's not self-authenticating. Why isn't it harmless? Because it could be authenticated by anyone saying it's a true and accurate depiction. All they have to say is, I've seen Farad. That's Farad. Well, yes. But it's not harmless because they had no one to do that. And so that would indicate... And you're actually right. The whole core of this is, is this case reliable? Can we rely on any of these things for the truth of the matter asserted? I mean, it's the core of our system of justice. What's the statement? I'm not sure I understand. In the picture, what is the statement? Tell me where there's a statement. I looked at the pictures. I didn't see any words. I didn't see a statement. All I saw was a picture. Well, in Martinez, they talk about that video. It's being used for the truth of the matter asserted. The other cases we cite do talk about pictures where they are meant to say something. And here, the government is saying... No, they're saying, what if they take a picture of someone who murders someone? Can they use it or is it hearsay? So someone murders... John Doe murders Jane Doe. There's a picture of John Doe stabbing Jane Doe. They get it on picture. Can they use it? How did they get the picture? I'm not being specious. All right, there's two ways they could get the picture. You could have an automated process that collects the picture, as we do with every bank robbery, or you have someone takes the picture. So can they use an automated... I like your example better, the bank robbery. Can they use the automated pictures? They snap them every second. The United States v. Salgado and Hombu way back in 2000. Talk about this. The picture... The issue is that reliability, right? So when you have an automated process, the reliability is the nature of the process that captures the image. If you show that this was an automated process that captured it, it's admissible. However, under 803, the defendant can then challenge that automated process as to whether it is reliable or not. This goes under that whole rubric of computerized records and why computerized printouts can be admitted. Reliability has nothing to do with hearsay. I would say the hearsay rule is all about... Is that out-of-court statement? Statement being the key word. Whether it's nonverbal? Whether it's pictorial? Whether it's music? Again, at court, the cases will hold that pictures also serve as statements. Because in fact... And forgive me for being cute and all, but we cited the whole issue of Rene Magritte's photo painting about this is not a pipe because it's an image of a pipe. We are saying something when we present images through all media of communication. Every news program shows video, shows pictures. They are communicating information. When we have human agency involved in that communication of information, we then have to step back and look at what are the challenges to reliability for human agency? How might that have been manipulated by someone? We have a fairly low standard of authentication. Like you said, somebody could say, this picture represents him. I saw him do that. I took this picture. Wasn't there testimony that this picture did represent him because of his tattoos and because of their going to the bathroom in the apartment that he rented and seeing distinctive moldings and so forth, distinctive mirror? Yes. The issue there is extrinsic versus intrinsic authentication. By saying, well, this is... That's still authenticating the picture from itself. Is that sufficient? That's particularly important when we're dealing with electronic images of an unknown province. We do not know who took the picture, who posted the picture. All we know is who downloaded the picture. Do we know when the picture was taken? I would say no. Because we only know when it was uploaded, right? We do know that date because Facebook says when it was uploaded. Yes. I believe... I would say you could know this by looking at the metadata relating to the photograph. However, that can be inaccurate. But I thought the facts in this case were that the metadata was wiped out by Facebook when it was uploaded. Right. But I... Yes. So is there a sufficiency of the evidence problem that you raise on appeal? You do raise sufficiency of the evidence problems. And that goes to the whole question of whether your client could be retried at all if there wasn't sufficient evidence. What is the evidence as to the timing of the photo compared to the indictment? My understanding, and I would defer to Mr. McLaurin for this, that the defendants' counsel stipulated that the photos were made at or about the time set out in the indictment. I will have to check that to be sure. So that basically disposed of that issue. The... It doesn't dispose, though, of... This was a stipulation at trial? I believe so. There was a stipulation. As to the timing of... I'll ask you directly about it. That's okay. Yeah. So that was my understanding of why I believe I did not pursue that. That still leaves open the issue of is it an authentic picture? Are the contents authentic? Normally, you would have, like Judge Lepar said, you have a witness that says, yes, this represents the circumstances as they appear in the photo. That's our standard method of authentication under 901. We don't have that. This is a case of trying to bootstrap this. Now... But I thought with the tattoos, the apartment, the... You could see him. I mean, I thought they could... I thought there was evidence that that was him, that was his apartment, all those things at trial. Am I wrong? No, there was evidence of similarity. But... But that's what you have to testify to and then the jury can accept or reject. It's a true and accurate depiction. But it's not... That's just it. It's similar to... It's not a true and accurate depiction. We don't know because we don't have a witness who says that. Most... I mean, most of the apartments I've lived in are low-end. All the bathrooms are the same. It's... I mean, even like his name on the... But that should have been explored and then the jury decide whether it really is him. Yes. But even if it had been, it's... Would that have been enough? Because you're... In all the other cases where this has come up, they have had considerably better extrinsic information that corroborates the evidence. For example, they have witnesses that say, yes, we saw him with a gun. Now, this apparently was in the search warrant affidavit. We saw him with a gun. Those people were never brought into court. So I don't know what was happening there. But this... This is tough. So, thank you. Thank you. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. I want to begin by answering your question, Judge Moore. Thank you. It's the... The stipulation is... Was exhibit number 16. It's found at pages... Page number 707, 708. The specific stipulation was that the photo was taken after May 29th, 2012. That's the time frame that was stipulated by the parties. The evidence at trial... Is that close enough than after May 29th, 2012, you say? And the indictment said... The indictment said on or about October 11th, 2013. And so the proof at trial was that this photo had been uploaded on October 11th, 2013. And... But you say the photo was taken after May 29th, 2012. Did I hear that right? Yes. That was the stipulation that was reached by the parties as to the timing that it was taken sometime after that. You say it was taken in June of 2012. Is that close enough to the uploading and to the... in the indictment which said on or about October 11th, 2013? I don't think that would be close enough to count as on or about. But I think the whole point in the evidence at trial that the jury was allowed to rely upon was that there was evidence from Facebook that this was in fact uploaded on October 11th, 2013. And there was testimony about the particular habits that folks usually have. Did the defense contest the date at trial? There wasn't really much argument over when specifically the photo was taken. Did the defense ever move in front of the judge to exclude the photo as unreliable because the date was too far back being May 29th, 2012? No. And it's not... The parties didn't agree that the photo was taken on May 29th. It's just that it was taken sometime after May 29th. And when did he move into the apartment? In February of 2013? I believe... Yeah, I believe that was February of 2013. I don't recall off the top of my head, but I do know that there is testimony in the record as to the time that he moved into the apartment and the time that he left the apartment. Did the defense ever raise the issue that the date could have been something other than October 11th or did they focus on... That was simply not an issue that was argued below at all. I mean, the timing was not a really key issue. The real main issue at trial was did this photo depict an actual firearm? In fact, there wasn't even really any dispute as to whether the photo depicted Mr. Farad. I believe counsel stated earlier that there wasn't testimony about Farad being the individual in the photo. There actually is testimony that was testified to before the photo was actually admitted into evidence. If you look at page ID number 679, Officer Garrison testified, yes, that individual in the photo is Mr. Farad. He recognized him as Mr. Farad. Officer Greider also confirmed that the individual depicted in the photo was Mr. Farad. There really wasn't any dispute at trial as to whether or not the individual was Mr. Farad. I know there was some question about how do we know who took this photo? The photo itself seems to... appears to indicate that Mr. Farad was the one who took the photo. Looks like a selfie. It does look like a selfie. It's structured that way. There really wasn't any dispute about that. The main dispute at trial was whether the item depicted in the photo was, in fact, a firearm. And there was ample expert testimony that was provided that the jury could have relied upon to conclude that the item depicted in the photograph was, in fact, a real firearm, not a fake firearm. And that was sufficient for the jury to base its verdict on. What do we do with this evidence that came out in the motion for new trial that there were, in fact, replicas of this particular firearm that were made and yet Hinkle had testified that he didn't think there were replicas? Well, I think there's a couple things about that. One, the evidence that was provided didn't actually establish when this ring manufacturing was selling these replicas. It wasn't established that they were even selling them at the time that Hinkle testified or at the time that these events occurred. Moreover, Mr. Hinkle's testimony was simply that his research hadn't uncovered this. And what Hinkle was focused on was whether there had been a toy or airsoft or BB gun, something that would look like a real firearm. A safety blue-colored replica couldn't possibly be mistaken for a real firearm because it's painted in a bright blue color. But it could be repainted or painted over. It's certainly theoretically possible, but there, you know, if there wasn't any evidence presented, I mean, there's simply no suggestion that this was a safety blue-colored replica. Even from the ring manufacturing websites, the evidence that was provided, there's not enough evidence there to indicate that the details of that blue replica are detailed enough that one could paint it such that it would, in fact, look like a real firearm. There's simply just not enough information that was provided. So I think the district court here looked at this and said, you know, you just haven't proven your claim. You have to show that the government knowingly presented false testimony. And there just wasn't any proof that the government knew at the time that it was presenting Hinkle's testimony that it was, in fact, false. Or that the testimony itself was, indeed, false. And I think the district court rightly concluded that it wasn't really material because the fact that there could have been these blue safety-colored replicas out there really didn't undermine the confidence in the jury's verdict because Hinkle himself testified as to all of these very unique features that you could see in the photo that would only be on a real firearm. And he explained all of these unique details. I'm not going to go into all of them. I'm not a firearms expert. That's why we had Officer Hinkle testify. But I think that the question is, was that sufficient? Could the jury rely upon that? Now, the counsel suggested, well, there's no cases that say, you know, this is enough. I'd actually urge the court to look at his reply brief. If you look at the Payne-Owens case that he cites from the Eighth Circuit, it's a 2017 case, the evidence there was simply a photograph. They had, I would argue, even less evidence than we had in this case because they had a photograph that showed, a photograph posted on Facebook that showed the defendant holding a firearm. And the only evidence they had to authenticate that was some other text that he had said where he appeared to be suggesting that he was holding a .45, which would qualify as a firearm. They didn't actually provide any expert testimony like we did in this case to identify that the item depicted in that photo was in fact a real firearm. They had other circumstantial evidence and the court said, that's enough. You don't have to bring in a real firearm. If you provide enough evidence that the jury can reasonably conclude that the defendant in fact possessed a real firearm, that's sufficient. And we look at the evidence that was actually presented in this case. Would we have had a stronger case if we had been able to bring in the firearm? Perhaps. And that certainly would have made the case stronger. But the question is not whether the government presented the best possible case out there, it's simply whether the evidence that was presented at trial is sufficient to support this particular conviction. And we believe that the evidence that was presented was more than sufficient to meet our burden of proof beyond a reasonable doubt. There's lots of other issues that are addressed in the brief. I've tried to so far focus on the issues that have been raised at argument. I'm happy to answer any other questions. Can I ask you, do you believe there's any argument that the photos themselves are somehow hearsay statements? No. Not at all. Thank you for bringing my attention to that. I think there's a couple problems with the hearsay argument. First, as you pointed out, Judge Thapar, where's the statement? It's unclear to me what the statement is that's supposed to have been the hearsay statement in these photographs. I mean, it's just a photograph. There's no oral or written assertion or any sort of  can reasonably contrue as an assertion. So is there a case that says that photographs cannot be hearsay? I don't think we could categorically say that photographs could never be hearsay. I think it's possible to imagine a situation where a photograph could be contained conduct that is intended as an assertion. But there are several cases that say photographs  aren't statements. And I believe we've cited those. Couldn't you say this is a statement, this is a gun? He's holding a gun. So there's a statement there. It's possible that one could construe this as a statement. If he was saying this is a gun, would it be an admission? It would seem that, again, that's the second problem with the hearsay  If he was saying, hey, look at me, I have a gun, if that's the statement, the statement in this case would be from Mr. Faraday. If Mr. Faraday himself admits something, his own statements can be used as not hearsay against him. So any statement here to the extent we can conceive a statement in these photographs would also be... What about the self-authenticating? Because isn't that a problem? People post stuff all the time. How can it be self-authenticating? Well, I think you have to look carefully at what was the government offering this for. We were... The reason we were saying this is self-authenticating, it was self-authenticating for the purpose of showing that this was in fact the photograph that had been posted on this particular Facebook account. The cases like Brown that have found problems with relying on social media things as being self-authenticating have involved issues where there was an authentication problem where the government was trying to use essentially bootstrap and say, hey, because we've got this, then we now can connect it to this individual's account. Just to play your argument out, you're saying when you post to your own Facebook site, it's inherently reliable and thus self-authenticating? Is that the argument? What we're trying to show is we were trying to authenticate this as the  posted this photo actually depicted what it appeared to depict. We presented other evidence to prove that. So somebody else could post it to that Facebook account conceivably if permission was given? If permission was given, yes. The purpose we were trying to introduce it for is that look, this is in fact the photo that was on this account. This particular fact is important in the case. In other cases, that was important. Here, I think whether or not this was Farad's account wasn't really a crucial fact. I think the key thing is did this photo depict what it appeared to depict? And we provided ample evidence to show that. We provided testimony from officers who worked on Facebook and we also provided expert testimony establishing that the item depicted in the photo was in fact a real fire. Hypothetically, suppose that what happened is that he took an actual photo of himself and had it developed at Walgreens and left that photo in a place where an agent happened upon it. We wouldn't have any of those information issues. We just go who is in this photo, is this photo admissible and so forth. So what's different about this case than my hypo? You can say nothing. I'm not really sure. It is much different other than the provenance of where we got this photo. The officers found it on Facebook. I think the helpful thing with Facebook is that we know at least a time at which the photo was uploaded. We know the photo could only have been taken before October 11, 2013. There are additional facts we can get out of the fact it was uploaded. If you found it on a filing cabinet somewhere, you would know the day you found it. You would know the day you found it. I think the uploading is helpful because it makes it more likely just given the way people normally post photos, particularly selfies on Facebook. Usually those tend to be posted shortly after the photos are taken. Although there are efforts now to post historical items on Facebook. Certainly. There are exceptions to general rules. The jury was allowed to rely on their common sense to figure out was this photo posted shortly after it was taken. The jury could have reasonably concluded based on the evidence presented at trial that this photo was taken on or about October 11, 2013. That the actions depicted in that photo. Does that depend on Garrison's testimony that this is normal behavior of people on Facebook to upload contemporaneously? I think it depends in part. Although I think the observations that officer Garrison made are also common sense observations. The jury could reach on its own. The jury is allowed to use common sense and understanding of the world. Was Garrison properly qualified as an expert on social media given his answers where he said basically he didn't have any basis for his statement that people uploaded contemporaneously? I think he did say that he had a basis for that. Part of it came from his training and part of it came from his conversations with other law enforcement officials about how social media had been used in their cases. I think the district court did reasonably conclude that officer Garrison had a basis to provide the testimony he provided based on his experience and conversations with other law enforcement officials. How come he was never listed as an opinion witness? I don't know the answer to that. Was there any Daubert challenge to him? There was no Daubert challenge. Was there a challenge to his offering opinions? There was objections that were made at the time. In fact, one of those objections, Judge Roland said, hey, you need to establish more foundation. We established more foundation and then asked the question again and Judge Roland concluded that sufficient foundation had been established at that point. Those were the only times. There was no Daubert arguments made at any time. Was he originally purporting to be a fact expert? He was testifying primarily as a fact witness. He was one of them. He actually was involved in the investigation. He was the one who first discovered the photos. Then he segues into here are my expert opinion. He didn't segue into that. There was a foundation laid to establish his experience in dealing with investigations involving social media. The number of investigations he had been involved in, the kind of training he had received. There was a foundation that was laid. The district court was very careful about making sure the foundation was sufficient to support the kind of questioning. He said to the public that he would not respectfully disagree. You didn't challenge the date below. You're not challenging the date now of when it was posted. That was the thrust of whatever opinion testimony Garrison gave. What did he do in your mind that was harmful such that we should throw out the verdict? If my question doesn't make sense, tell me and I'll try and rephrase. No, no. He testified. We challenged him on appeal. We raised it as subject to plain error analysis. He's not an expert who can testify to the habits of Facebook users. He's a police officer doing investigations. But his testimony was exceptionally harmful. And how? Explain that to me. It established that by his testimony he's saying it was  or about the time it was made on or about the time it was posted. From his experience, gangsters are doing this to brag. Why not challenge the date below or the date now? If that is the harm, how come the defense neither in closing made that argument nor now? I do not know, Judge. The garrison established that the taking of the picture occurred on or about the time it was posted, which is on or about the date set out in the indictment. But he did so with testimony that certainly would not withstand peer review or publication. He's testifying to this. Sure, but you can, you know, law enforcement officers in the 6th Circuit and every circuit in the country is blessed that they get peer reviewed. It's not in articles. If I had my daughter testify, she could testify, presumably, as to what people do with Facebook and how they post and those things because this is all they're doing. So why can't someone form that opinion? And as your opponent said, why isn't it common for people to say, well, I don't want my picture on Facebook for just this reason. Right, but presumably if we believe the jury's verdict, Mr. Farad was posting them, right? But it was the jury misled by, okay, well, Jake Garrison, for example, what I would have done is said, whoa, we need to go take the jury out, let's see what foundation this police officer has to make statements that no other criminologist in the country or sociologist has been able to establish regarding Facebook habits for gangsters. That's all I want, reliability, because this is all about reliability. I want to know that what he's saying is reliable. And so what issue, and I agree with you, so let's assume everything you just said I agree with, what issue is harmful to you that he testified about, because if you're not putting the dated issue below and you're not putting the dated issue now, I don't understand where the harm is. The dated issue as stipulated gave a rage. Number one, he established that, oh wow, he established that this happened at the time set out in the indictment. Number two, which you never contested. I would have, but, you know, it, but it wasn't raised, you're saying it wasn't raised at trial and you didn't raise it in the brief here. No, because the evidence came from Garrison, but if you throw out Garrison's evidence, that's why we say that's not harmless error. If you throw out Garrison's testimony, you've lost two key things. You've lost that time click, but you also have this. Garrison said, this is gangsters bragging about being tough guys. He's saying, Farhad is making a statement to the world that he's a tough guy and he's got a gun. And that, it was immensely damaging to Farhad, because, hey, there's the government's case form right there. That's what the picture was. Which is why the picture should have come in, because it itself was unauthenticated. It was never properly authenticated. In addition, as the court in Jackson said, being hearsay that was not established under an exception. And under Melendez-Diaz, forgive me, the confrontation issue, you cannot cross that line.   point. And if I could examine an affidavit, I would have brought the guy in. Because if you brought him in under 803 the guy who signed the affidavit for Facebook, what they failed to do was 803C6C&E. Those were never established, which is why the hearsay rule keeps this out. It was never established. No, it wasn't challenged at trial. Forgive me. Thank you. Thank you. Thank you both for your argument. And Mr. LoSavio, I see you're appointed pursuant to the criminal justice act. And we thank you for your service. Would the clerk adjourn the hearing? This hearing is now adjourned.